# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | |
|---|---|
| **THOMAS PEELER** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **vs** ) | **No.** |
| ) | **JURY DEMAND** |
| **REXEL HOLDINGS USA d/b/a** ) | **JUDGE** |
| **REXEL, INC. and REXEL, INC.** ) | |
| ) | |
| ) | **MAGISTRATE** |
| **Defendants** ) | |

## COMPLAINT

Comes now Plaintiff, by and through counsel, and files for his cause of action the following:

### JURISDICTION AND VENUE

1.     This action is brought under the SARBANES-OXLEY ACT and the FMLA.

2.     This Court has jurisdiction under 28 U.S.C. 1331 to hear Plaintiff's claims arising under the Constitution and laws of the United States.

3.     This Court has jurisdiction under 28 U.S.C. 1343(4) to hear Plaintiff's claims to recover damages and to secure equitable relief under any Act of Congress providing for the protection of civil rights.

4.     This Court has supplemental jurisdiction over all state law claims alleged in this complaint under 28 U.S.C. 1367 as there is a common nucleus of operative facts between state and federal law claims.

5.     Venue is appropriate in the Middle District of Tennessee under 28 U.S.C. 1391(b)(2) as this is the judicial district in which a substantial part of the events or omissions giving rise to this claim occurred.

## FACTS

6.     Plaintiff, Thomas Peeler, is a resident of Sumner County, Tennessee.

7.     Plaintiff was hired by Defendant in April of 1984.

8.     Plaintiff was hired as a receiving clerk.

9.     Defendant, Rexel Holdings USA, exercises significant dominion and control over the operation of Rexel, Inc. to be held liable for the conduct of Rexel, Inc., its employees and agents.

10.     Defendant, Rexel, is a global leader in the distribution of electrical supplies and services, serving three main end markets: industrial, commercial and residential. Defendant does business in the State of Tennessee in Davidson County, Tennessee.

11.     Plaintiff's job performance met or exceeded the expectations of Defendant throughout his career until Defendant began discriminating against him.

12.     During his employment with Defendant, Plaintiff's job title and responsibilities changed in relation to his experience and qualifications. At the time of the acts complained of herein, Plaintiff held the job title of Outside Sales and was paid by commission only.

13.     During his tenure as Outside Sales, Plaintiff's job performance exceeded the expectations of Defendant in volume of sales as well as customer growth.

14.     Defendant had an accounting system known as "Cash Account" wherein contractors/customers would receive special rebate pricing through corporate contracts with vendors such as Sylvania, General Electric, Allen-Bradley and Square D. These are entities from which Defendant purchased product for ultimate retail sale.

15. An example would be light bulbs Defendant purchased from Sylvania. Defendant would purchase light bulbs from Sylvania at book price. Book price is the is the price Sylvania charged Defendant for light bulbs.

16. Certain ultimate customers of Defendant, such as contractors or industrial customers, were eligible for special reduced pricing of product such as light bulbs through contracts between Defendant and entities such as Sylvania. As an incentive from Sylvania for the low costs of product to Defendant, Defendant would agree to order a certain volume of product from Sylvania or other entities.

17. At the end of a fiscal quarter or month Defendant would "file back" to receive rebates from these entities such as Sylvania based upon the volume of product sold only to qualified customers. This was cash coming back to Defendant.

18. However, in an effort to increase the amount of cash coming back to Defendant from these entities, Defendant would run "counter purchases" through the "registered cash accounts." Counter purchases were not qualified for these special savings and rebates. Defendant would run individual customer purchases, "counter purchases," through the qualified accounts and then submit the sale back to an entity such as Sylvania in order to receive rebates it was otherwise not qualified for. This resulted in significant profit for Defendant it was not otherwise entitled to.

19. Plaintiff became aware of this accounting process as to other employees in the company. It had become common knowledge what was being done to increase Defendant's profit. This was being done in violation of global contracts Defendant had with these entities such as Sylvania.

20. In or about 2011, Plaintiffs's supervisor, "John," introduced him and his co-employees to a new manager, "Jeff." This new manager was to become Plaintiff's supervisor. In

this meeting, Plaintiff and other employees present were told by "John" that "everyone knows" about the misuse of the registered cash account. "John" admitted to the staff that is was fraud and the "company could be in big trouble because we're a publicly traded company."

21.     Defendant knew that Plaintiff not only opposed the practice but refused to remain quiet about the same.

22.     Plaintiff's new supervisor began taking his customer accounts and assigning them to less experienced Outside Sales persons. This was done in an effort to force Plaintiff to resign as his income was based solely on commissions.

23.     In addition, Plaintiff's supervisor began berating and demeaning Plaintiff in front of other Outside Sales personnel and creating a hostile work environment that significantly inhibited him from performing the essential functions of his job. This hostile environment caused Plaintiff to suffer significant depression, extreme stress, anxiety, embarrassment and humiliation.

24.     The retaliatory conduct of Defendant and the hostile environment Plaintiff was subjected to prevented him from performing the essential functions of his job. Plaintiff was forced to resign and therefore constructively discharged.

## COUNT I

### Violations of Title VIII of the Sarbanes-Oxley Act of 2002, 18 U.S.C. §1514A

25.     Plaintiff incorporates herein by reference the factual allegations outlined in paragraphs 1 through 24.

26.     Rexel, Inc. is a "publicly traded company" as defined by the Sarbanes-Oxley Act of 2002, 18 U.S.C §1514A.

27.     Plaintiff opposed and refused to remain quiet about the conduct which he

reasonably believed constituted a violation of section 1341, 1343, 1344 or 1348, any rule or regulation of the Securities and Exchange Commission or any provision of Federal law relating to fraud against shareholders.

28.     The information provided to Plaintiff came from a person with supervisory authority over the employee or other such person working for the employer who has the authority to investigate, discover or terminate misconduct.

29.     Defendant did discharge, threaten, harass and discriminate against Plaintiff in the terms and conditions of employment because of any lawful act done by Plaintiff.

## COUNT II

### Violations of the Family Medical Leave Act, 29 U.S.C. §2601 *et seq.*

30.     Plaintiff incorporates herein by reference the factual allegations outlined in Paragraphs 37 through 43.

31.     At all times complained of herein, Plaintiff was an eligible employee under the Family Medical Leave Act.

32.     Plaintiff was employed by Defendant for more than 12 months.

33.     Plaintiff suffered a serious health condition that made him unable to perform the essential functions of his job. This condition, or conditions, were caused by the retaliatory and harassing conduct of Defendant, or its agents.

34.     With knowledge of Plaintiff's conditions, Defendant failed to engage in the interactive process or otherwise engage Plaintiff for purposes of providing FMLA or other medical leave. Instead, Defendant constructively discharged Plaintiff.

35.     Plaintiff alleges that the intentional acts and omissions as described herein by the Defendant constitute violations of the Family Medical Leave Act in that Plaintiff.

**WHEREFORE**, Plaintiff prays that the Court grant the following relief to Plaintiff:

1.     Order Defendants, to make Plaintiff whole by providing him with appropriate back pay with interest, front pay, insurance premiums and medical costs, with pre-judgment interest, in amounts to be proven at trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices.

2.     That Defendants be permanently and forever enjoined from any further prohibitive discrimination or retaliation against Plaintiff.

3.     Order that Defendants make Plaintiff whole by providing compensation for non-pecuniary losses, including emotional pain, suffering, inconvenience, mental anguish, embarrassment and humiliation in an amount to be proven at trial.

4.     Plaintiff be awarded compensatory damages in an amount to be determined at the trial of this cause.

5.     That Plaintiff be awarded punitive damages in an amount to be determined at the trial of this cause.

6.     That Plaintiff be awarded reasonable attorney's fees, including litigation expenses and costs for having to bring this manner.

7.     That Plaintiff be granted such other relief as the Court deems just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY.

ANDY L. ALLMAN & ASSOCIATES

BY:

ANDY L. ALLMAN    -    #17857
103 Bluegrass Commons Blvd
Hendersonville, Tn. 37075
(615) 824-3761